Charles Swift, TX Bar #24091964
*CONSTITUTIONAL LAW CETNER*
*FOR MUSLIMS IN AMERICA*
833 E. Arapaho Rd., Suite 102
Dallas, TX  75081
Telephone:  (972) 914-2507
Facsimile:  (972) 692-7454
cswift@clcma.org
*Pro Hac Attorney for Defendant Mustafa Kamal*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 2:17-cr-01214-JJT |
| Plaintiff, | |
| vs. | **DEFENSE SENTENCING MEMORANDUM** |
| Mustafa Kamal, | |
| Defendant. | (Honorable John Tuchi) |

Defendant Mustafa Kamal ("Mr. Kamal") through counsel, respectfully submits this Sentencing Memorandum in connection with his sentencing by the Court on November 12, 2019. On August 29, 2019, Mr. Kamal plead guilty before this Honorable Court to one count of 18 U.S.C. § 879(a)(1), Threats Against a Former President. Mr. Kamal accepts full responsibility for his actions, and through this memorandum, seeks to provide the Court with information pertinent to his sentencing in the interests of justice under 18 U.S.C. § 3553(a).

## DEFENDANT KAMAL'S SENTENCING MEMORANDUM

### I.  SENTENCING ANALYSIS

In accordance with *United States v. Booker*, 543 U.S. 220 (2005), the Court is directed to impose a sentence in accordance with 18 U.S.C. § 3553(a). In so doing, the Court is to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment

set forth in 18 USC § 3553(a)(2). *Id.*; *see, e.g., Kimbrough v. United States*, 552 U.S. 85, 111 (2007) ("sufficient, but not greater than necessary" requirement is the "overarching instruction" of § 3553(a)). Those purposes include "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 USC § 3553(a)(2)(A); "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B); "to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C); and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2)(D). In determining a sentence "sufficient, but not greater than necessary" to accomplish these purposes, courts must consider a number of factors, including (as relevant here) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); the guidelines sentencing range and any applicable Sentencing Commission policy statements, *id.* § 3553(a)(4), (5); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* at § 3553(a)(6).

The Sentencing Guidelines recognize that mental and emotional conditions "may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." USSG § 5H1.3.[1]  Given the magnitude of Mr. Kamal's mental health difficulties, it is a condition that is "present to an unusual degree" and that "distinguish[es] the case from the typical cases covered by the guidelines."

---

[1]The current language of the provision reflects a 2010 amendment. *See* USSG App. C, Vol III at 348 (Amendment 739). Prior to the amendment, the provision stated that mental and emotional conditions were "not ordinarily relevant in determining whether a departure is warranted."  *See United States v. Ferguson*, 942 F.Supp.2d 1186, 1192 (M.D. Ala. 2013)**.**

The harder question is whether he would also qualify for a downward departure on the basis of USSG § 5K2.13. That provision requires that "the defendant committed the offense while suffering from a significantly reduced mental capacity," and that "the significantly reduced mental capacity contributed substantially to the commission of the offense."  Then, too, the Court may not depart if "the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." In a case such as this one in which Mr. Kamal has significant mental health issues but has been treated and has the benefit of a large, capable support system, a Rule 11(c)(1)(B) plea agreement is appropriate to ameliorate what could otherwise be an overly severe penalty to impose on an individual with mental health issues.

There are reasons for a downward departure relating to Mr. Kamal's mental health but there are also reasons for an upward departure, namely the facts that his criminal history and the instant offense are a result of his mental illnesses. But Mr. Kamal has now received appropriate treatment for these psychiatric illnesses and thus, there is no need to depart upwards. On the contrary, every indication shows that Mr. Kamal needs continued psychiatric medication and treatment and the support of his family to succeed in that process.

For these reasons, the defense agrees with the recommend guidelines range and respectfully submits that a sentence within the Guidelines range, but under no circumstances more than time served, is sufficient, but not greater than necessary in this case.

## II.      SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

### A. History and Characteristics of the Defendant

The Presentence Report (PSR) provides a broad overview of Mr. Kamal's personal life and family history. Mr. Kamal grew up in Iraq during the 1990's, when Iraq was suffering under the brutal dictatorship of Saddam Hussein and crippling international sanctions. Mr. Kamal's father

feared Saddam Hussein and the family fled Iraq to Turkey when Mr. Kamal was 16 years old. From there, the family came to the United States as refugees. Arriving in the United States at 17 years of age, Mr. Kamal faced a new society and culture at a critical age for social and psychological development. Mr. Kamal's family faced financial difficulties and Mr. Kamal worked to assist them. After graduating from high school, he enrolled in community college to study computer science, but he could not graduate. (PSR, 58). At this time, he was exposed to and began using cannabis, drinking alcohol, and experimenting twice with other illegal substances. It is unclear when Mr. Kamal's significant mental health issues began, but his unstable and troubled life as a youth and as a young adult Iraqi refugee in the United States certainly contributed to the advancing psychological issues he suffered from at the time of the instant offense.

Mr. Kamal has a significant history of mental health issues including Schizoaffective Disorder, Bipolar Type; Provisional Delusional Disorder, Psychotic Disorder and possible Schizophrenia. (PSR, 49-52). Mr. Kamal was evaluated at the U.S. Medical Center in Springfield, Missouri from January 10, 2019, to April 29, 2019, when he was found incompetent and kept for treatment to restore his competency. This is the first time Mr. Kamal was properly treated for his psychiatric health issues, the first time he has been put on psychotropic medications, which he has stated have been beneficial to him. (PSR, 51). He was not taking any such medications when he committed the instant offense. Mr. Kamal has stated he believes he will benefit from further mental health treatment. Mr. Kamal's adequate medication and care have made a marked improvement in his mental health. He is also fortunate to have a robust system of family support. Mr. Kamal is very close to his family. His mother, father, sister, and brother all live together in the same house and have supported each other since coming to the United States as refugees. (Exhibit A.1, A.2,

A.3, A.4, A.5). In the letters[2] submitted with this Sentencing Memorandum, Mr. Kamal's family describe their deep care for Mr. Kamal and the "wake up call" the instant offense created regarding his mental health. Mr. Kamal's mother and father are determined to assist Mr. Kamal in his treatment to ensure his continued progress as it has had a "powerful positive impact" on the entire family (Exhibit A.2). Mr. Kamal's family begs that the Court give a sentence that would allow Mr. Kamal to return home and emphasize that they will "make [sure] that he shows up at any appointment that he is scheduled to go to as well as making sure he takes his medication as he is supposed to." (Exhibit A.1, A.2). His family notes that they have noticed a significant improvement in Mr. Kamal since his treatment and they are eager for him to return home to further his progress and return him as a positive and productive member of the community. (Exhibit A.1-A.5).  Both his family and friends believe Mr. Kamal will make every effort to work with the Government on his treatment and that his gentle and generous nature will ensure he is returned as a positive and grateful member of the community. (Exhibit A).  For these reasons, the defense respectfully submits that Mr. Kamal's personal and family history and characteristics merit a sentence within the Guidelines range, but not greater than time served.

**B. The Events Giving Rise to the Offense Conduct**

The evaluator at the Federal Bureau of Prisons indicated that Mr. Kamal experienced manic and psychotic symptoms in the months preceding his arrest for the instant offense. This evaluator also noted that antipsychotic medication was the proper treatment for this psychotic disorder and Mr. Kamal has stated that this medication has been beneficial to him. (PSR, 51).

---

[2] Exhibit A consists of 10 letters from Mr. Kamal's friends and family members. These include letters from his mother, father, brother and sisters. Letters from the Arizona Allnation Refugee Resource Center, a U.S. military veteran and family friend, and his friends. They all attest to Mr. Kamal's kind, respectful and generous character and his contributions to his community and his family. His family's letters are strong testimonials of the support he will receive in their care and their investment in his success.

At the time of the instant offense, Mr. Kamal was clearly psychologically unwell. The rambling and delusional Facebook posts he made about "black magic for earth" and sending the Obama's back to Africa, are clearly a result of his underlying schizophrenic and psychotic disorders. Further, the statement Mr. Kamal made to the officers at his home that he "did have intent to kill President Obama" was made under the stress and overstimulation of having law enforcement confront him inside his home. (PSR, 8-9). Because of the manic and psychotic symptoms he was experiencing at this time, Mr. Kamal would have become very agitated and overstimulated by the presence and insistence of law enforcement. His statement was made with no intention or ability to carry out his threat, it was a statement made out of frustration in an impaired and untreated psychological state. Pursuant to Rule 11 (c)(1)(B), the Government has agreed to recommend that for the purposes of USSG §2A6.1(b)(5), Mr. Kamal's offense involved a single instance, evidencing little or no deliberation, resulting in a four-level reduction. This recommendation is made because Mr. Kamal had no intention of carrying out his threat and the circumstances surrounding the statements he made are clearly the result of mental illness. For these reasons, Mr. Kamal's "history and characteristics" and "the nature and circumstances of the offense," justify a sentence within the Guidelines and certainly no more than time served. 18 U.S.C. § 3553(a)(1).

### III.    PURPOSES UNDER 18 U.S.C. § 3553(a)(2)

Under 18 U.S.C. § 3553, the Court is instructed that it "shall impose a sentence sufficient, but not greater than necessary." Of the goals set out in 18 U.S.C. § 3553(a)(2), the Government and the Court consider carefully the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" the need "to afford adequate deterrence to criminal conduct;" the need "to protect the public from further crimes of

the defendant," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(2).

To the extent that Mr. Kamal's mental illness contributed to the offense, a sentence of time served, and within the guidelines, is justified by the recognition that those who commit offenses due to mental illness or deficits of intellect are less culpable:

> Together, the amendments and policy statements [of the Guidelines] reflect the principle that "punishment should be directly related to the personal culpability of the criminal defendant." *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), abrogated on other grounds, Atkins v. Virginia, 536 U.S. 304, 307, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002). A few "exceptionally" mentally ill defendants may be found incompetent to stand trial or judged not guilty by reason of insanity; however, there also exists a spectrum of mental deficits and diseases that lessen, but do not erase, a person's responsibility for her crimes. *See* Jennifer S. Bard, Re-Arranging Deck Chairs on the Titanic: Why the Incarceration of Individuals with Serious Mental Illness Violates Public Health, Ethical, and Constitutional Principles and Therefore Cannot Be Made Right by Piecemeal Changes to the Insanity Defense, 5 Hous. J. Health L. & Pol'y 1, 4-5 (2005). "[E]vidence about [a] defendant's background and character is relevant" to the sentencing decision, "because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *Penry*, 492 U.S. at 319 (quoting *California v. Brown*, 479 U.S. 538, 545, 107 S. Ct. 837, 93 L. Ed. 2d 934 (1987) (O'Connor, J., concurring)).

United States v. Ferguson, 942 F.Supp.2d 1186, 1192-1193 (M.D. Ala. 2013)

Mr. Kamal is now being treated for his mental illnesses. He has improved and this has been noticed by the Federal Bureau of Prisons and his family. (Exhibit A, —, PSR, 44). Mr. Kamal's offense, while serious, was made without any deliberation or intent to carry it out. His continued psychiatric treatment and return to his strong familial support system are needed here. For these reasons, the Defense submits that a sentence of time served best serves the purposes of

18 U.S.C. § 3553(a)(2).

## IV.    EFFECT OF THE PLEA AGREEMENT

In the Rule 11 (c)(1)(B) plea agreement, the government agreed to recommend a sentence of time served. (Dkt. 83, para 3(b)).  The Guidelines range calculated for Mr. Kamal's offense is a sentence between 12 and 18 months in prison. Under 18 U.S.C. § 3585(b), regarding the calculation of credit for prior custody, the Bureau of Prisons determines pretrial credit rather than the Court. "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences -(1) as a result of the offense for which the sentence was imposed." 18 U.S.C. § 3585(b). While the Court does not calculate the time served in prior custody, it does need to show what the defendant's time served consists of. Thus this case presents a need to deviate slightly from the general rule that the Court does not concern itself with prior custody credit.

In an effort to aid the Court in the absence of any calculation from the Government or in the PSR, the defense has calculated the possible time served timeline for the purposes of § 3585(b). The defense is unable to identify if Mr. Kamal's four months in treatment, under the custody of the Attorney General, is included in calculation of time served in prior custody, thus both calculations are included here.

Mr. Kamal was ordered detained on September 8, 2017. He was not ordered to receive treatment to restore his competency until October 30, 2018.  This was a period of 13 months and 3 weeks. He was declared competent on May 13, 2019. From May 13, 2019 until sentencing on Nov. 12, 2019 is six months in custody. Without including time for Mr. Kamal's psychiatric treatment, his time served is 19 months and 3 weeks. Alternatively, Mr. Kamal's time served, when calculated to include his treatment, would be 23 months and 3 weeks.

8

Under paragraph 3(b) of the Plea Agreement, the government's recommendation is tied, in part, to the amount of time served in prior custody. The defense wants to ensure that this calculation is accurate and binding to make certain the sentence meets all requirements. The defense is primarily concerned about whether Mr. Kamal's time in custody for mental health treatment would be counted as time in prior custody by the BOP. There is certainly an argument that it should be, but the defense has not identified case law on this issue. Accordingly, the defense respectfully submits that the Court conservatively calculate Mr. Kamal's time served in order to adhere to the intent of the plea agreement (Dkt. 83, 3(b)), absent assurances from the government that the BOP will credit all of Mr. Kamal's prior custody.

Whatever the Court may conclude is the proper calculation of the time served, the defense submits that the Court should give a sentence within the guidelines range even though Mr. Kamal has already served time in excess of the recommended guidelines range. The defense notes this may be unpalatable to the Court, but Mr. Kamal is a unique case, he has benefitted from his additional time in detention because he has finally received proper psychiatric care and medication. Now that Mr. Kamal has received treatment and proper medication, he is doing much better. The key for this particular defendant is that this treatment is continued in the supportive and familiar environment of his family home. For these reasons, the defense recommends a sentence within the guidelines range, but in no case should it exceed the greater of time served.

## V.   MR. KAMAL'S SENTENCING RECOMMENDATION

### a.  Sentence

Because Mr. Kamal is significantly disabled by his mental illness and made his threatening statement to the officers while suffering with manic and psychotic symptoms, agitation and overstimulation, a sentence of time served, in line with the guideline range of 12 to 18 months is

sufficient but not greater than necessary to fulfill the goals of sentencing established by Congress and the need to punish, deter, and rehabilitate. Mr. Kamal, therefore, requests that this Court impose the sentence of time served recommended by the Office of Probation and the Government with appropriate sanctions to ensure that he receives the necessary treatment.

### b.   No Fine Should Be Imposed

Per the Guidelines, Probation notes that subject to Mr. Kamal's ability to pay, the Court may impose a fine sufficient to cover the costs of probation, supervised release and imprisonment. (PSR, 73,76). However, the PSR also notes that Mr. Kamal has no ability to pay any such fine. (PSR, 62-66). The government also has not recommended any fine. (Dkt. 83, 3(b)). Mr. Kamal would be burdened beyond what he can manage with any fine and it would impair his recovery. For these reasons, the defense respectfully submits that no fine be imposed.

### VI.   MR. KAMAL REQUESTS NOTICE OF ANY POSSIBLE DEPARTURE

If the Court anticipates sentencing Mr. Kamal to a term outside of the recommended sentence in the plea agreement on a ground not identified for departure in the presentence report or a prehearing submission, the Defense respectfully requests notice of this intent and the opportunity to respond to the concerns of the Court pursuant to Fed. R. Crim. Proc. 32 (h).

### VII.   CONCLUSION

For the reasons set forth above, counsel on behalf of the defendant urges this court to impose the recommended sentence of time served.

Respectfully submitted,

*s/ Charles D. Swift*
Charles D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Mustafa Kamal*
Constitutional Law Center for
Muslims in America

833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
cswift@clcma.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of November, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send a notice of this electronic filing to all counsel of record.

**/s/** ***Charles D. Swift***
Charles D. Swift

*Pro Hac Attorney for Defendant, Mustafa Kamal*